# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

DUSTIN HOWLETT,

      Plaintiff

v.

WILLIAM GITTERE, et al.,

      Defendants

Case No.: 2:23-cv-00260-JAD-EJY

**Order Screening Complaint and Denying Without Prejudice IFP Application**

[ECF No. 1]

      Plaintiff Dustin Howlett brings this civil-rights action under 42 U.S.C. § 1983, claiming that his Eighth Amendment rights were violated when corrections officers beat him to the point of serious injury for no valid penological purpose. Because Howlett applies to proceed *in forma pauperis* (IFP),[1] I screen his complaint under 28 U.S.C. § 1915A. I find that Howlett's IFP application is incomplete, so I deny it without prejudice and give him until June 5, 2023, to either file a new fully complete application or pay the full $402 filing fee for a civil-rights action. I find that Howlett has pled a colorable Eighth Amendment excessive-force claim against Miller and Owens, so I allow that claim to proceed against only those defendants. I find that the allegations could be construed as stating a retaliation claim, but Howlett does not sufficiently allege that he suffered a harm that is more than minimal, and he fails to identify any individual who is liable for that alleged constitutional violation. So I dismiss the First Amendment retaliation claim with leave to amend by June 5, 2023. And I dismiss defendants Gittere and Frazier from this action without prejudice because Howlett pleads no facts to causally connect them to the events of the complaint.

---

[1] ECF No. 1.

## I.     Filing fee

The United States District Court for the District of Nevada must collect filing fees from parties initiating civil actions.[2]  The fee for filing a civil-rights action is $402, which includes the $350 filing fee and the $52 administrative fee.[3]  "Any person who is unable to prepay the fees in a civil case may apply to the court for leave to proceed *in forma pauperis*."[4]  For an inmate to apply for *in forma pauperis* status, the inmate must submit **all three** of the following documents to the court: (1) a completed **Application to Proceed *in Forma Pauperis* for Inmate**, which is pages 1–3 of the court's approved form, that is properly signed by the inmate twice on page 3; (2) a completed **Financial Certificate**, which is page 4 of the court's approved form, that is properly signed by both the inmate and a prison or jail official; and (3) a copy of the **inmate's prison or jail trust fund account statement for the previous six-month period**.[5]  *In forma pauperis* status does not relieve an inmate of his obligation to pay the filing fee, it just means that the inmate can pay the fee in installments.[6]

Howlett has not paid the required filing fee or filed a complete application to proceed *in forma pauperis*.  Howlett's application is incomplete because he failed to include a financial certificate and a prison trust fund account statement for the previous six-month period with his application.  I deny Howlett's incomplete application and give him **until June 5, 2023,** to either pay the required filing fee or file a new fully complete application to proceed *in forma pauperis*

---

[2] 28 U.S.C. § 1914(a).

[3] *See* 28 U.S.C. § 1914(b).  The fee for filing a petition for writ of habeas corpus is $5. 28 U.S.C. § 1914(a).

[4] Nev. Loc. R. LSR 1-1.

[5] *See* 28 U.S.C. § 1915(a)(1)–(2); Nev. Loc. R. LSR 1-2.

[6] *See id.* at § 1915(b).

with all three required documents.  And I caution Howlett that this action will be dismissed without prejudice if he fails to timely comply.

## II.     Screening standard

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or an officer or employee of a governmental entity.[7]  In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous or malicious, or that fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief.[8]  All or part of the complaint may be dismissed *sua sponte* if the prisoner's claims lack an arguable basis in law or fact.  This includes claims based on legal conclusions that are untenable, like claims against defendants who are immune from suit or claims of infringement of a legal interest that clearly does not exist, as well as claims based on fanciful factual allegations or fantastic or delusional scenarios.[9]

Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief.[10]  In making this determination, the court takes all allegations of material fact as true and construes them in the light most favorable to the plaintiff.[11]  Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers,[12] but a plaintiff must provide more

---

[7] *See* 28 U.S.C. § 1915A(a).

[8] *See id.* at § 1915A(b)(1)(2).

[9] *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

[10] *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).

[11] *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996).

[12] *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *see also Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (recognizing that pro se pleadings must be liberally construed).

than mere labels and conclusions.[13]  "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations."[14]  "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[15]

**III.    Screening of complaint**

Howlett sues William Gittere, Fernandies Frazier, and ten unidentified "doe" defendants for events that allegedly occurred while he was incarcerated at Northern Nevada Correctional Center (NNCC).  Howlett brings one claim and seeks monetary and injunctive relief.  Howlett alleges the following:

**A.    Factual allegations**

On February 21, 2022, Corrections Officers Owens and Miller physically beat Howlett even though he was not resisting.  Howlett "was compliant and did not act as the ag[g]ressor."  The beating began when Howlett was being removed from Unit 10-B in restraints.  Howlett was forced to the ground by Owens, "who used all of his body weight to drive his knee into the back of and right side of [Howlett's] neck, leaving deep black and blue bruising on [the] back and side of [Howlett's] neck."  Howlett was then escorted into the operations building where he asked if he could file a police report.

At this point, Howlett was "violently grabbed and moved" by "multiple" corrections officers.  Someone placed a taser in Howlett's back and asked if he still wanted to file a police report.  Howlett was forcefully shoved into a cell by Owens.  Although Howlett complied when

---

[13] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[14] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

[15] *Id*.

Owens instructed him to get against the wall, Owens "began beating [Howlett's] head against the wall, while yelling that Howlett needed to "get against the wall."

Then Miller grabbed Howlett, removed him from the wall, and shoved him back against the wall while beating Howlett's forehead against the wall.  This caused Howlett to be removed from the wall again.  Owens took over for Miller and continued beating Howlett's head against the wall.  Owens and Miller then exited the cell, entered the cell, and removed Howlett's handcuffs.

While Howlett was facing the wall, Owens began punching him in the face and side of the head from the right while Miller punched Howlett from the top left.  Howlett placed his hands and arms up to the sides of his face to block the blows, but Miller and Owens continued to punch Howlett until he fell to the ground.  Howlett saw blood on the wall, bench, and floor, and he left a trail of blood when he was dragged from the cell.  Howlett was roughly handcuffed: the cuffs were twisted and left deep bruises and scars on his wrists.

Howlett suffered numerous injuries from these events.  His forehead was bruised; both of his eyes were swollen and bruised; the bottom of his left eye split open and it left a scar; Howlett's teeth were chipped and both of his ears, and behind his ears, were severely bruised and swollen.  Howlett also had bruising and swelling on the top of his head, back of his neck, wrists, top of his hands, shoulders, arms, and back of his arms.[16]

Based on these allegations, Howlett contends that his Eighth Amendment rights were violated.  I liberally construe the complaint as bringing claims based on two different theories of liability: (1) use of excessive force in violation of the Eighth Amendment and (2) retaliation in violation of the First Amendment.  I address each theory and any related issues below.

---

[16] ECF No. 1-1 at 2–9.

1   **B.   Eighth Amendment—excessive force**

2   When a prison official is accused of using excessive physical force in violation of the

3   cruel-and-unusual-punishment clause of the Eighth Amendment, the claim turns on whether

4   force was applied in a good-faith effort to maintain or restore discipline, or maliciously and

5   sadistically for the purpose of causing harm.[17]  In determining whether the use of force was

6   wanton and unnecessary, it may also be proper to consider factors like the need for application of

7   force, the relationship between that need and the amount of force used, the threat reasonably

8   perceived by the responsible officials, and any efforts made to temper the severity of a forceful

9   response.[18]  Although an inmate need not have suffered serious injury to bring an excessive force

10  claim against a prison official, the Eighth Amendment's prohibition on cruel and unusual

11  punishments necessarily excludes from constitutional recognition *de minimis* uses of physical

12  force.[19]

13  Based on Howlett's allegations, corrections officer Owens roughly forced Howlett to the

14  ground while he was handcuffed and being transported within the prison.  Owens used his entire

15  bodyweight to drive his knee into Howlett's neck.  After Howlett was moved into another cell,

16  Owens and Miller repeatedly punched him in the face and head and slammed his body and head

17  into the wall.  Owens and Miller unhandcuffed Howlett and continued beating him, then roughly

18  handcuffed him.  Howlett was compliant when these events occurred and not an aggressor.

19

20

21

---

22  [17] *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)).

23  [18] *Hudson*, 503 U.S. at 7.

[19] *Id*. at 9–10.

1    Howlett alleges that he suffered severe bruising and swelling of his head, neck, and upper

2    body.  His teeth were chipped.  His lower eyelid was split open.  And Howlett has scars on his

3    wrists from the rough cuffing and under his eye from the beating.

4    I find that these allegations are enough to state a colorable claim that Owens and Miller

5    used a not *de minimis* amount of force when transporting Howlett within the prison, and the

6    force was not applied in a good-faith effort to maintain or restore discipline.  The Eighth

7    Amendment retaliation claim can therefore proceed against only Owens and Miller.

8    **C.    First Amendment—retaliation**

9    Prisoners have a First Amendment right to file prison grievances and pursue civil-rights

10   litigation in the courts "and to be free from retaliation for doing so."[20]  A retaliation claim in the

11   prison context has five elements.[21]  "First, the plaintiff must allege that the retaliated-against

12   conduct is protected."[22]  Filing or submitting a grievance, complaint, or lawsuit about jail

13   conditions or alleged constitutional violations is protected conduct.[23]  The form that an inmate's

14   complaint takes—"even if verbal"—"is of no constitutional significance, and threats to sue fall

15   within the purview of the constitutionally protected right to file grievances."[24]

---

[20] *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012); *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004).

[21] *Watison*, 668 F.3d at 1114.

[22] *Id.*

[23] *Entler v. Gregorie*, 872 F.3d 1031, 1039 (9th Cir. 2017).

[24] *Id.*

Second, the plaintiff must allege that "the defendant took adverse action against [him]."[25] "'The mere threat of harm can be an adverse action.'"[26]  The third factor requires the plaintiff to "allege a causal connection between the adverse action and the protected conduct."[27] Allegations "of a chronology of events from which retaliation can be inferred is sufficient" at the screening stage.[28]

"Fourth, the plaintiff must allege that the 'official's acts would chill or silence a person of ordinary firmness from future First Amendment activities.'"[29]  "A plaintiff who fails to allege a chilling effect may still state a claim if he alleges [that] he suffered some other harm that is more than minimal."[30]  The fact "[t]hat the retaliatory conduct did not chill the plaintiff from suing the alleged retaliator does not defeat the retaliation claim" at the pleading stage.[31]

The fifth factor requires the plaintiff to allege "'that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution.'"[32]  A plaintiff can sufficiently plead "this element by alleging, in addition to a retaliatory motive, that the defendant's actions were arbitrary or capricious, or that they were unnecessary to the maintenance of order in the institution."[33]

---

[25] *Watison*, 668 F.3d at 1114.

[26] *Id.* (brackets and emphasis omitted) (quoting *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009)).

[27] *Id.*

[28] *Id.*

[29] *Id.* (quoting *Robinson*, 408 F.3d at 568).

[30] *Id.* (brackets and quotation marks omitted) (quoting *Brodheim*, 584 F.3d at 1269 and *Robinson*, 408 F.3d at 568 n.11).

[31] *Id.*

[32] *Id.* (quoting *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985)).

[33] *Id.* (internal quotation omitted).

Howlett alleges that, after he was moved into the operations building, he asked unnamed corrections officers if he could file a police report about the force that Owens had used when removing him from the unit.  Multiple unnamed corrections officers "violently grabbed and moved" Howlett in response to his request.  One officer put a taser into Howlett's back and asked if he still wanted to file a police report.

I find that these allegations fall short of stating a colorable retaliation claim.  The allegations state that Howlett engaged in protected conduct when he asked to file a police report about alleged physical abuse by a corrections officer.  The allegations reasonably suggest that unnamed corrections officers in the operations building took adverse action when they manhandled Howlett and threatened to taser him because he asked to file a police report.  And the allegations arguably state that the retaliatory action did not advance legitimate goals of the correctional institution because Howlett was handcuffed, had just sustained a neck injury, and was being compliant when this occurred.  But the allegations falter at the fourth factor of the First Amendment analysis because Howlett does not allege facts showing that the adverse actions had a chilling effect or would chill or silence a person of ordinary firmness.  And it is not clear from the allegations that Howlett suffered "harm that is more than minimal" from the adverse actions.

This claim is further deficient because Howlett does not allege that Owens, Miller, Gittere, or Frazier manhandled or threatened to taser him in the operations building.  Rather, Howlett alleges that unnamed corrections officers engaged in this conduct, and he includes 10 Doe defendants in the caption of his complaint.  The use of "doe" or similar means to identify a defendant is not favored but flexibility is allowed in cases in which the identity of the parties will

1  not be known before filing a complaint but can subsequently be determined through discovery.[34]

2  Howlett, however, does not allege enough facts to show that the true name of any corrections

3  officer who is liable for this alleged constitutional violation can be determined through

4  discovery.  For example, Howlett pleads the day this happened but not the approximate time,

5  which could be used to narrow the field of possible defendants.  And Howlett does not plead any

6  facts to describe the unnamed corrections officers, e.g., age, race, or gender.  But it does not yet

7  appear that Howlett cannot state any set of facts upon which relief can be granted.  So I dismiss

8  the First Amendment retaliation claim without prejudice and with leave to amend by June 5,

9  2023.

10        I note that Howlett does not plead facts to show that Gittere or Frazier participated in any

11  of the alleged constitutional deprivations stated in the complaint.  Howlett alleges that Gittere

12  was the Director of the Nevada Department of Corrections and Frazier was NNCC's Warden

13  during the events of the complaint.  So Howlett appears to name Gittere and Frazier as

14  defendants simply because they work in a supervisory capacity.  But allegations about an

15  individual's job duties or title are not enough to state a colorable claim against them under 42

16  U.S.C. § 1983.  Rather, a defendant is liable under § 1983 "only upon a showing of personal

17  participation by the defendant."[35]  "There is no respondeat superior liability under [§] 1983."[36]

18  So supervisors can be held liable under § 1983 for only (1) "their own culpable action or inaction

19  in the training, supervision, or control of [their] subordinates;" (2) "their acquiescence in the

20

21

22  _____

[34] *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

23  [35] *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

[36] *Id.*

1  constitutional deprivation of which a complaint is made; or" (3) "for conduct that showed a

2  reckless or callous indifference to the rights of others.'"[37]

3  **IV.    Leave to amend**

4          I grant Howlett leave to amend his First Amendment retaliation claim to attempt to plead

5  true facts showing that the adverse action had a chilling effect, would silence or chill a person of

6  ordinary firmness, or that he suffered a harm from the adverse action that is more than minimal.

7  I also grant Howlett leave to identify the true name of any individual who allegedly manhandled

8  and threatened to taser him in the operations building on February 21, 2022.  And I grant

9  Howlett leave to plead true facts to show that Owens, Miller, Gittere, or Frazier personally

10  participated in that alleged constitutional violation.  But I do not grant Howlett leave to amend to

11  allege new claims.

12          If Howlett chooses to file an amended complaint, he is advised that an amended

13  complaint replaces the original complaint, so the amended complaint must be complete in

14  itself.[38]  This means Howlett's amended complaint must contain all claims, defendants, and

15  factual allegations that he wishes to pursue in this lawsuit, including the Eighth Amendment

16  excessive-force claim that I allowed to proceed in this order.  Howlett must file the amended

17  complaint on this court's approved prisoner-civil-rights form, and it must be entitled "First

18  Amended Complaint."  Howlett must follow the instructions on the form.  He need not and

19  should not allege very many facts in the "nature of the case" section of the form.  Rather, in each

20

21  _____

22  [37] *Hyde v. City of Willcox*, 23 F.4th 863, 874 (9th Cir. 2022) (quoting *Cunningham v. Gates*, 229
   F.3d 1271, 1292 (9th Cir. 2000)).

23  [38] *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir.
   1989) (holding that "[t]he fact that a party was named in the original complaint is irrelevant; an
   amended pleading supersedes the original").

count, he should allege <u>facts</u> sufficient to show what <u>each</u> defendant did to violate his civil rights. **And he must file the amended complaint by June 5, 2023**.

**V.      Conclusion**

IT IS THEREFORE ORDERED that the application to proceed *in forma pauperis* **(ECF No. 1) is DENIED without prejudice.  Plaintiff has until June 5, 2023, to either pay the full $402 filing fee or file a new fully complete application to proceed in forma pauperis with all three required documents**: a completed application with the inmate's two signatures on page 3; a completed financial certificate that is signed both by the inmate and the prison or jail official; and a copy of the inmate's trust fund account statement for the previous six-month period.

IT IS FURTHER ORDERED that **if plaintiff fails to either file a new fully complete application to proceed *in forma pauperis* or pay the required filing fee by June 5, 2023, this action will be subject to dismissal without prejudice**.  A dismissal without prejudice allows plaintiff to refile the case with the court, under a new case number, when plaintiff can file a complete application to proceed in forma pauperis or pay the required filing fee.

IT IS FURTHER ORDERED that:

- The First Amendment retaliation claim is DISMISSED with leave to amend by June 5, 2023; and

- The Eighth Amendment excessive-force claim MAY PROCEED against only defendants Miller and Owens.

IT IS FURTHER ORDERED that **defendants William Gittere and Fernandies Frazier are DISMISSED without prejudice, and the Clerk of Court may terminate them as parties.**

If plaintiff chooses to file an amended complaint, he must use the approved form and he will title it "First Amended Complaint."  The amended complaint will be screened in a separate

screening order, and **the screening process will take <u>many months</u>.  If plaintiff does not file an amended complaint, by June 5, 2023, this action will proceed immediately on only the Eighth Amendment excessive-force claim against Miller and Owens.**

IT IS FURTHER ORDERED that **the Clerk of the Court is directed to** (1) FILE the Complaint (ECF No. 1-1); (2) SEND plaintiff Dustin Howlett the approved form for filing a § 1983 prisoner complaint and instructions for the same, the approved form application to proceed *in forma pauperis* for an inmate and instructions for the same, and a copy of his original complaint (ECF No. 1-1); and (3) add Lieutenant Miller and Corrections Officer Owens to the docket as defendants.

Dated: May 5, 2023

_____
U.S. District Judge